IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSEPH SOLIZ, | § | |
| *Plaintiff,* | § | 5:25-CV-00930-DAE-RBF |
| vs. | § | |
| ALAMO COLLEGES DISTRICT (ACD), CHANCELLOR OF ACD MIKE FLORES, PRESIDENT ADENA WILLIAMS LOSTON, ST. PHILIP'S COLLEGE; DIRECTOR OF STUDENT CONDUCT AND TITLE IX, ALEXANDRA RODRIGUEZ FIGUEROA, CHRISTOPHER BEARDSALL, SUPERVISOR DONALD FERNANDEZ, SUPERVISOR ELIZABETH LEON, INSTRUCTOR ROY V. RUIZ, ST. PHILIP'S COLLEGE; ST. PHILIP'S COLLEGE, OFFICER JAQUELINE TRISTAN, OFFICER LUIS MARTINEZ, OFFICER #3, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; AND OFICER FNU HERNANDEZ, IN HER OFFICIAL AND INDIVIDUAL CAPACITIES; | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge David A. Ezra:**

This Report and Recommendation concerns Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion"). *See* Dkt. No. 35. The District Judge referred pretrial matters for resolution under Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 5. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Motion, Dkt. No. 35, should be **GRANTED**, and this matter should be **DISMISSED**.

## Factual and Procedural Background

Plaintiff Joseph Soliz, who is proceeding *pro se*, was at all times relevant to this case a student at St. Philip's College, an individual college within the Alamo Community Colleges District ("ACCD") system. He was enrolled in a class taught by Roy Ruiz, named as a defendant here.[1]

On January 17, 2024, Soliz and Ruiz got into a dispute during class. Soliz was working on a lab exercise regarding electrical circuits. Dkt. No. 1-2 at 6. He one to begin alarming. *Id*. at 7. Ruiz came over and offered to assist him, and Soliz told him that he would "get it figured out." *Id*. Ruiz then explained multiple times to Soliz that he was not following directions. *Id*. Soliz insisted that he was doing it his own way and asked Ruiz not to "micromanage" him. *Id*. Ruiz took away his lab papers, and Soliz took them back, refusing to relinquish them. *Id*. Ruiz threatened to summon campus police and instead summoned Elizabeth Leon, a St. Philip's staff member. *Id*. at 7-8. Ms. Leon attempted to resolve the issue with Soliz, but Soliz did not cooperate and "told [her] the conversation was over." *Id*.

The next morning, Ruiz sent an email to Soliz asking him not to attend class that day. *See id*. at 24-25 (Email from Ruiz). The email explained that, in Ruiz's, view Soliz had been unduly combative and had misused equipment, which Ruiz believed posed a safety risk, and that Soliz had refused to follow instructions and disrupted the class. *Id*. Soliz attended class anyway. *Id*. at 12. Ruiz approached Soliz and said that if he refused to leave, Ruiz would call campus police. *Id*. Soliz refused, and Ruiz followed through on his statement.

[1] The facts in this section are drawn from the exhibit attached to and referenced in Soliz's Original Complaint, which the Court refers to pursuant to its power to take judicial notice of prior pleadings in the Rule 12(b)(6) posture. *See infra* at pgs. 5-7 (justifying this decision in greater detail).

Campus police arrived and took Soliz with them to "temporary campus police offices." *Id*. They showed Soliz the email that Ruiz had sent that morning, establishing the grounds for his removal from class. *Id*. Campus administrators came by and were discussing the matter outside the office. Soliz, "hearing discussion about [him], left the campus police temporary offices and entered the hallway." *Id*. at 13. Soliz briefly talked over the incident with school administrators, who planned to scheduled him for a student conduct meeting to be held on Monday, January 22, 2024. *Id*. at 13-14. They then sent Soliz a notification for a Zoom meeting to take place on January 19, 2024. *Id*. at 14. Soliz states he did not attend the meeting because it was too short notice, and because he was unable "to engage counsel or be able to research or craft a defense." *Id*. As a result of the classroom dispute, Soliz states, he "was barred from both of Roy's class[es] he was enrolled in until he had additional safety instruction." *Id*.

Soliz filed the present action on August 5, 2025. Dkt. No. 1. The Court held an initial pretrial conference on November 3, 2025; discovery was stayed until further order by the Court. Dkt. No. 24. Soliz filed a "Notice of Amendment Identifying Previously Unknown Defendants" that "amend[ed] the Complaint solely to substitute" police officers not identified in the Original Complaint. Dkt. No. 28. After being granted an extension of time to file a new amended complaint, Soliz then filed the live complaint, abandoning several causes of action and streamlining his claims. Dkt. No. 33.[2] The present Motion to Dismiss soon followed, asking to dismiss this action for failure to state a claim. Dkt. No. 35.

---

[2] Plaintiff states in his Response to the Motion that he "does not abandon the claims asserted in the original complaint," and that "the amended complaint was filed for the purpose of clarification and improved organization of the allegations." Dkt. No. 39 at 5. But failure to raise in the amended complaint the claims from an earlier pleading abandons them, regardless of *pro se* status. *Stewart v. City of Houston Police Dep't*, 372 Fed. App'x 475, 478 (5th Cir. 2010) (per curiam) (unpublished) ("An amended compliant supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates

The live pleading names a dozen defendants and endeavors to state claims for (1) unreasonable seizure in violation of the Fourth Amendment via § 1983; (2) Fourteenth Amendment Procedural Due Process violations via § 1983; (3) municipal liability under *Monell*; and (4) First Amendment Retaliation via § 1983. Dkt. No. 31. To the extent Soliz has attempted to plead other claims, the allegations in support are too vague and conclusory to state claims for relief. *See id*. at 15 (making offhanded reference to "FERPA," *i.e.*, the Family Educational Rights and Privacy Act, which in any case does not provide a cause of action, either alone or via § 1983[3]); *see also* Dkt. No. 39 at 6 (in which Soliz disclaims any intent to invoke Title VI of the Civil Rights Act and states that his reference to a "hostile educational environment" was to support a *Monell* claim, "offered as contextual evidence of an institutional custom or practice.").

**Analysis**

For the reasons provided herein, Soliz has failed to state any claim for relief. Soliz is attempting to mount a constitutional case for $5 million in compensatory damages, as well as other relief, on the basis of a minor classroom spat with an instructor over a failure to follow basic classroom instructions and a brief interaction with ACCD police officers. None of the constitutional claims asserted are viable, and this case should be dismissed in its entirety.

**A. The Rule 12(b)(6) Standards.**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a case in which the plaintiff has "fail[ed] to state a claim upon which relief can be granted." In deciding a Rule

---

by reference the earlier pleading.") (quoting *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)). Soliz has not specifically adopted or incorporated the prior claims in his live pleading but demonstrated an ability to do so when intending to. Dkt. No. 28. Soliz also expressly states that he did not intend to re-raise his Title VI claim in his live pleading. Dkt. No. 39 at 6.

[3] *See, e.g.*, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 276 (2002); *Tarka v. Franklin*, 891 F.2d 102, 104 (5th Cir. 1989).

12(b)(6) motion, a "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotations and citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original). To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555-56). These factual allegations need not be highly detailed but "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). A conclusory complaint—one that fails to state material facts or merely recites the elements of a cause of action—may be dismissed for failure to state a claim. *See id*. at 555-56.

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citation omitted). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

While it is true that a Court ordinarily looks to only the live complaint when considering a motion to dismiss, "courts may take judicial notice of matters of public record," including prior

pleadings. *Sanders v. Univ. of Texas Pan Am.*, 776 F. App'x 835, 837 (5th Cir. 2019) (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)) (per curiam) (unpublished). As the Fifth Circuit has explained, even though old pleadings may no longer bind a plaintiff to the old claims and theories asserted, the pleaded facts can retain evidentiary force:

> It is true some courts have suggested a fact omitted from a superseding complaint is "*functus officio*"—and hence cannot be considered on a motion to dismiss the amended complaint . . . But we have never employed such an absolute rule. Admissions in superseded pleadings may "lose their binding force," but they nevertheless retain value "as evidentiary admissions."

*Id*. (citing *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 n.5 (5th Cir. 1983)); *see also Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724 (5th Cir. 2019). Courts have taken this course when presented with exceptional circumstances. Thus:

> In addition, to more fully view the time-line of events leading to this litigation, the Court should take judicial notice of the Civil Complaint Affidavit that Plaintiff provided with his original complaint. Although the amended complaint entirely supersedes the original complaint and renders it of no legal effect, nothing prohibits a court from considering factual allegations provided with a prior pleading. Given additional questions raised by Plaintiff's answers to the court questionnaire, this case presents exceptional circumstances that warrant consideration of factual allegations presented in the prior complaint.

*Keller v. Daniels*, No. 1:18-CV-0093-BL, 2019 WL 1560496, at *1 n.2 (N.D. Tex. Jan. 14, 2019), *report and recommendation adopted*, No. 1:18-CV-00093-C, 2019 WL 1557168 (N.D. Tex. Apr. 10, 2019); *see also Feagin v. Travis Cnty. Sheriff's Off.*, No. A-11-CA-702-LY, 2012 WL 5354624, at *5 (W.D. Tex. Oct. 26, 2012) (comparing complaints in a Rule 12(b)(6) posture).

Under the exceptional circumstances presented here, the Court takes judicial notice of the original complaint and the exhibit attached to and referenced in it. *See Sanders*, 776 F. App'x at 837. The Court does so here because it is clear Soliz is attempting to plead around, by omission, important facts he specifically pleaded previously. *Compare* Dkt. No. 1-2 *with* Dkt. No. 33.

Indeed, these matters were the subject of a motion to dismiss rendered moot by the filing of the live pleading. *See* Dkt. No. 9 at 4-6 (motion to dismiss factual recitation based on original complaint), 5 (noting, "although Plaintiff alleges that he was 'detained,' Dkt. 1, ¶ 15, his written statement attached to the complaint establishes that he was freely able to walk out of the police offices when he decided to do so. Dkt. 1-2 ECF p. 13."). By omitting facts previously pleaded, the live complaint would have the Court believe Soliz was detained and held arbitrarily, which is plainly not so when matters pleaded in and with the original complaint are considered. *See* Fed. R. Civ. P. 11(b) (establishing that filing matters with the Court requires a signature a that "[b]y presenting to the court a pleading . . . , an . . . unrepresented party certifies . . . it [the pleading] is not being presented for any improper purpose . . . [and] factual contentions have evidentiary support or . . . will likely have evidentiary support. . . .").

The Court's grant of leave to amend to cure deficiencies in the original complaint was a grant of leave to plead more specific facts in support of the right claims, not an invitation to selectively omit pertinent and important facts contained therein in an attempt to plead around the relevant legal standards. *See* Dkt. No. 24 at 2 (granting leave to amend so that the pleadings "conform[] to federal pleading requirements under [Rule 8] and [*Trombly*] and . . . otherwise provide[] Defendants *with needed details* as to Plaintiff's claims, as discussed on the record at the conference.") (emphasis added).

**B. Plaintiff Has Failed To State a Claim for A Constitutional Violation.**

All of Soliz's constitutional claims fail on the record before the Court, and without a constitutional violation to speak of, there is no basis to sustain a *Monell* violation. Accordingly, Soliz has failed to state any viable claim for relief. Although issues regarding immunities are also implicated and would likely also independently support dismissal of at least some claims, the

Court does not address these matters because Soliz has failed to state a claim regardless of any applicable immunities.

**1.** *The Fourth Amendment claim fails.* "Under the Fourth Amendment, a seizure occurs when, under the totality of the circumstances, a reasonable person would have thought he was not free to leave." *Keller v. Fleming*, 952 F.3d 216, 222 (5th Cir. 2020) (citing *Michigan v. Chesternut*, 486 U.S. 567, 572 (1988)). The Supreme Court "has stated 'the general rule that Fourth Amendment seizures are reasonable only if based on probable cause' to believe that the individual has committed a crime." *Bailey v. United States*, 568 U.S. 186, 192 (2013) (citing *Dunaway v. New York,* 442 U.S. 200, 213 (1979)).

The Supreme Court has "on many occasions . . . reiterated that the probable-cause standard is a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (quoting *Illinois v. Gates,* 462 U.S. 213, 232 (1983)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois*, 462 U.S. at 232. "To determine the presence or absence of probable cause to arrest, one must consider the totality of the circumstances surrounding the arrest." *United States v. Maslanka*, 501 F.2d 208, 212 (5th Cir. 1974) (citation omitted). Probable cause exists if the officer had "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964). Indeed, "[p]robable cause requires only 'a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Winfrey v. Rogers*, 901 F.3d 483, 495 (5th Cir. 2018) (citing *Illinois*, 462 U.S. at 243 n.13).

Assuming Soliz was in fact detained,[4] his detention was not unreasonable, and he can state no Fourth Amendment claim as a result. Soliz's own pleaded facts establish that, from the standpoint of an objectively reasonable officer, his detention was supported by a probability or substantial chance of criminal activity, specifically trespass. Soliz stated in the exhibit to his original complaint that he was asked by his instructor, Defendant Ruiz, not to come to class after getting into a dispute over a lab assignment. Dkt. No. 1-2 at 8. In that email, Ruiz clearly asked Soliz not to come to class and stated he was elevating the matter with school administration; CC'd on that email were Elizabeth Leon and Donald Fernandez, Department Chair at the time. Dkt. No. 1-2 at 24-25. Mr. Fernandez acknowledged the email within the hour. *Id*. at 26. Soliz attended anyway. Ruiz asked him if he had read the email, and when Soliz said yes, Ruiz instructed him to leave the classroom. *Id*. at 12. "Roy [Ruiz] then told me that if I refuse to leave, he would have to do call campus police." *Id*. Soliz told him to do so. *Id*. Only then did Ruiz ask for the assistance of campus police in removing Soliz from the classroom, with the pleadings demonstrating that they did so pursuant to Ruiz's instruction not to come to class, as well as the more immediate order to leave. *Id*. at 12-13.

The officers were warranted in detaining Soliz, assuming *arguendo* that they detained him, because the pleaded facts make clear a reasonable officer would have believed there was reasonable suspicion or a probability or substantial chance of criminal activity occurring, under the totality of the circumstances—specifically, an ongoing trespass offense. The Texas Penal Code for example, provides that a person commits trespass by remaining on the property of another without consent after that person received notice to depart but failed to do so. Tex. Penal

[4] There may also be an independent basis to conclude that no detention or seizure took place, as Soliz pleaded that he freely left the custody of campus police. Dkt. No. 1-2 at 13 ("Hearing discussion about me, I left the campus police temporary offices and entered the hallway.").

Code § 30.05(a)(2). "Notice" under that statute is oral or written communication by the owner or someone with apparent authority to act for the owner. Tex. Penal Code § 30.05(b)(2). From a reasonable officer's viewpoint, an ACCD faculty member with apparent authority to do so, having also coordinated by email with a Department Chair, directed Soliz to leave the classroom, and he refused, creating a probability of a criminal offense. *See, e.g., Ryans v. Gresham*, 6 F. Supp. 2d 595, 603 (E.D. Tex. 1998) (finding no Fourth Amendment wrongful arrest as a matter of law because "[a] reasonably prudent person in this situation would have concluded that the elements of criminal trespass were present; in other words, probable cause existed to arrest [plaintiff] for that offense"). Important to note is that the inquiry asks what a reasonable officer would conclude about a probability or substantial chance of trespass based on non-technical conceptions about the totality of the circumstances, not whether Soliz actually committed trespass under the technical legal requirements of the statute.

Soliz was furthermore never arrested, and it is also true that "[a]n officer is justified in detaining an individual for investigation if, based on specific articulable facts together with rational inferences from the facts, he suspects that an individual may be engaged in criminal activity." *United States v. Silva*, 957 F.2d 157, 159-60 (5th Cir. 1992) (citing *United States v. Sokolow,* 490 U.S. 1 (1989)). "The presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time of the decision to stop a person." *Id.* at 159 (collecting cases). Thus, the officers had reasonable suspicion for purposes of effecting the brief detention for the same reasons that would support probable cause.

Soliz's speculation that he was unreasonably detained on the basis of past conduct is unavailing. Dkt. No. 33 at 8 ("Officer TRISTAN later acknowledged on video that the alleged

disruptive conduct cited by Defendant Ruiz did not occur that day, confirming that Defendant Ruiz's request for police intervention was not based on any contemporaneous offense."). Soliz himself pleaded that he was detained after failing to comply with Ruiz's immediate request that he depart the classroom. Dkt. No. 1-2 at 8, 12-14; *id*. at 24-25 (Email from Ruiz). The Court need not credit Soliz's legal conclusion about the motives for his alleged detention when his own pleaded facts plainly provide sufficient justification for the detention, assuming he was detained.

Lastly, Soliz's allegation that "Defendants further violated the Fourth Amendment by prolonging the detention for administrative convenience after any justification dissipated" is conclusory and, once again, contradicted by his own pleaded facts. Dkt. No. 33 at 13. There are no pleaded facts supporting the allegation that Soliz's detention was "prolonged," let alone for any reason other than to investigate the suspected trespass. Soliz, in any event, pleaded that he left the custody of the campus police officers to go out and confront school administrators he believed were talking about him, which plainly reflects that he was not being detained at that time and that his detention had not been unreasonably prolonged. *See* Dkt. No. 1-2 at 13. Soliz's other references to detention for some "administrative purpose" are also entirely unavailing; Soliz misuses the cases cited in support, and a police officer may detain to investigate a trespass on another's property so long as the detention is supported by reasonable suspicion or probable cause. *Ryans*, 6 F. Supp. 2d at 603.

**2.** *The Fourteenth Amendment Procedural Due Process claim also fails.* "To state a Fourteenth Amendment Procedural Due Process claim under § 1983, 'a plaintiff must first identify a protected life, liberty, or property interest, and then plead that a governmental action that resulted in a deprivation of the interest.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels,* 250 F.3d 943, 946 (5th Cir.2001)). Thus, a Procedural Due

Process claim necessarily fails if the claimant fails to identify a protected interest. *Baldwin*, 250 F.3d at 946. As far as property interests are concerned in the Procedural Due Process context, "because the Constitution protects rather than creates such property interests, their existence must be determined by reference to rules or understandings that stem from an independent source such as state law." *Urb. Devs. LLC v. City of Jackson, Miss.*, 468 F.3d 281, 304 (5th Cir. 2006) (internal quotations and citation omitted).

Soliz pleads in conclusory fashion by his live complaint that he had a "protected liberty and property interest in continued access to his public education and classroom experience." Dkt. No. 33 at 13. As a factual matter, Soliz pleaded in his original complaint that he was "barred from attending further classes taught by Defendant Ruiz and was denied educational opportunities for which tuition had been paid." Dkt. No. 1 at 3. And in his statement attached to the original complaint, Soliz similarly noted that he "was barred from both of Roy's class [sic] he was enrolled in until he had additional safety instruction." Dkt. No. 1-2 at 14. In a similar case, the Fifth Circuit squarely held "that no protected property interest is implicated in a school's denial to offer a student a particular curriculum." *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 27 (5th Cir. 1997) (citing *Arundar v. DeKalb Cty. School Dist.*, 620 F.2d 493 (5th Cir.1980)). Summarizing *Arundar v. DeKalb Cty. School Dist.*, the Fifth Circuit stated the following:

> In *Arundar,* a high school student had claimed that her property right to education was implicated when she was denied enrollment in certain courses of study. We affirmed the district court's dismissal of the case and held that although state law could create a protected interest in a particular kind of education, for example by mandating special education for exceptional children, absent such a basis in state law, there was no cause of action.

*Id*. (citing *Arundar*, 620 F.2d 494). And in *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, on an appeal from the Western District of Texas, the Fifth Circuit concluded there was no protected

*liberty or property* interest where a high school student had alleged "threatened removal from regular classes and assignment to the Rebound program [as] a form of punishment that impacted the student's protected property and liberty interests." *Id*. at 26. Soliz's Procedural Due Process claims fail for largely the same reasons here. Soliz has ultimately failed to plead a protected liberty interest of which he was deprived, and he has failed to plead a protected property interest with the necessary reference to, for example, state law.

Soliz's references to a "vested interest" via tuition payments or some vaguely described contractual relationship with ACCD are unavailing, and his pleadings fail allege any specific contractual right or ensuing entitlement for Procedural Due Process purposes. *See Pickett v. Texas Tech Univ. Health Scis. Ctr.*, No. 5:20-CV-232-H-BQ, 2024 WL 1590161, at *17-18 (N.D. Tex. Jan. 2, 2024), *report and recommendation adopted*, No. 5:20-CV-232-H-BQ, 2024 WL 1048140 (N.D. Tex. Mar. 11, 2024), *aff'd*, No. 24-10304, 2024 WL 4973300 (5th Cir. Dec. 4, 2024); *see also Malhotra v. Univ. of Ill. at Urbana-Champaign*, 77 F.4th 532, 537 (7th Cir. 2023) ("Because Malhotra failed to sufficiently plead that the University officials violated a specific contractual right between the parties, he did not allege a constitutionally protected property interest in remaining enrolled at the University."). If anything, the authorities show the opposite, *i.e.*, that denial of a particular curriculum is not a protected liberty interest, nor a protected property interest based in an independent source of law. Soliz's invocation of some general right to classroom access in his live complaint fails because it is supported by a case dealing with suspension from high school—not the imposition of a requirement to re-enroll in a college course. *See Goss v. Lopez*, 419 U.S. 565 (1975). Soliz has provided no indication that he was actually expelled or suspended from ACCD. And Soliz's allegations across the pleadings are

far too vague or conclusory to support a claim that he was deprived of any other kind of protected life, liberty, or property interest.

**3.** *The First Amendment Retaliation claim also fails.* Soliz also appears to endeavor to state a First Amendment retaliation claim. *See* Dkt. No. 33 at 4 (alleging that certain actions "constituted retaliation for protected academic inquiry . . . ."). A First Amendment retaliation claim requires a plaintiff to prove: "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338 (5th Cir. 2017), *as revised* (July 3, 2017).

Soliz does not identify a constitutionally protected activity for purposes of his First Amendment retaliation claim. He states only that he was engaged in "protected academic inquiry," but that is a legal conclusion, and his earlier-pleaded facts make clear he is complaining about how an instructor handled his failure to follow directions and enforce basic classroom rules. Dkt. No. 1-2 at 6-12. His quibbles about the procedures in a lab assignment are not protected speech, and his cited cases largely regard the raising of viewpoints and intellectual disagreement in a school context. *See, e.g.*, *Keyishian v. Bd. of Regents of Univ. of State of N. Y.*, 385 U.S. 589 (1967) (overturning as vague and overbroad a regulatory scheme meant to prevent employment of "subversive persons" by the state); *Papish v. Bd. of Curators of Univ. of Missouri*, 410 U.S. 667 (1973) (regarding a state university's attempt to ban a student's dissemination of a newspaper). Nowhere else in Soliz's pleadings does he identify any particular statement or protected speech at issue. He perhaps comes closest when he makes reference to his

"objection to the use of religious symbols during class instruction" at some prior, unspecified time, but the pleadings make clear that the conduct complained of in the instant case is based on the immediate dispute between Soliz and Ruiz over disruptions of class and failure to follow instructions, and not in retaliation for these objections. Dkt. No. 33 at 11. Thus, Ruiz's actions were clearly not substantially motivated by this (vaguely described) earlier objection, or any other statement or activity. Any First Amendment retaliation claim that could be attempted against the police-officer defendants or other government actors would fail for the same reasons. *See Degenhardt v. Bintliff*, 117 F.4th 747, 758 (5th Cir. 2024). Ultimately, the First Amendment retaliation claim is vague and conclusory as pleaded and fails as a matter of law.

Moreover, Soliz's pleaded facts establish that his dispute with Ruiz disrupted class. It is well settled that "conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969). Soliz's pleaded facts deprive him of any claim on First Amendment grounds for this reason as well. *See* Dkt. No. 1-2 at 28 ("The Office of Student Conduct received four (4) [reports] and one Police Report between January 17-18, 2024. Every report alleges disruptive behavior, safety hazard concerns, among other possible violations of the [ACCD] Student Code of Conduct . . . .").

Soliz's own pleaded facts demonstrate that he repeatedly refused to follow Ruiz's instructions during a lab assignment involving electric circuity. Dkt. No. 1-2 at 6-10. Soliz at one point caused a circuit to start alarming. *Id*. at 7, 24-25. Soliz rebuffed Ruiz twice when asked or reminded to follow instructions. *Id*. at 7. Ruiz ultimately had to call Elizabeth Leon for

assistance, and Leon then talked to Soliz. *Id*. at 7-8. Soliz was uncooperative throughout. When asked not to return to class the next day, Soliz did so, necessitating the intervention by campus police discussed above, resulting in the cancellation of class. *Id*. at 29 (stating that "Mr. Ruiz's class had to be canceled today because of this incident" and further detailing the disruption). Plaintiff's First Amendment claim fails as a matter of law for this reason as well.

### B. Absent a Predicate Constitutional Violation, There is No *Monell* Claim.

Lastly is Plaintiff's *Monell* claim. "To establish *Monell* liability, a plaintiff must show that an official policy promulgated by a municipal policymaker was the moving force behind the violation of a constitutional right." *Henderson v. Harris Cnty., Texas*, 51 F.4th 125, 130 (5th Cir. 2022) (citation omitted). For the reasons provided above, however, Soliz has failed to plead that he suffered a violation of any constitutional right. His *Monell* claim therefore fails as a matter of law and should be dismissed.

## Conclusion and Recommendation

For the reasons discussed above, it is recommended that the Motion to Dismiss, Dkt. No. 35, be **GRANTED**, and the case should be **DISMISSED** in its entirety.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this Report and Recommendation

must be filed **within fourteen (14) days** after being served with a copy of same, unless this deadline is modified by the Court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the presiding District Judge's standing orders or other Court order. *See* W.D. Tex. Local Rule CV-7. The objecting party shall file the objections with the Clerk of the Court and serve the objections on all other parties.

A party is entitled to a *de novo* review by the District Judge of the findings and conclusions contained in this Report and Recommendation, only if specific objections are made. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the default time to file objections from 10 to 14 days). An objecting party must therefore specifically identify those findings, conclusions, or recommendations to which objections are made, as well as the basis for all such objections; the District Judge need not consider frivolous, conclusory, or general objections. *Id*. Failure to timely file written, specific objections to any proposed findings, conclusions, or recommendations contained in this Report and Recommendation will bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the District Judge, except on grounds of plain error, given that the party is here provided notice that such consequences will result from a failure to object. *See* 28 U.S.C. § 636(b)(1)(C); *Douglass*, 79 F.3d at 1417. Finally, facts or legal arguments raised for the first time in objections to a Magistrate Judge's findings, conclusions, and recommendations are "not properly before the district court." *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992); *see also Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369 (5th Cir. 2024) ("[The Fifth Circuit] considers arguments forfeited if they are not raised before a magistrate judge, even if

they are subsequently raised before the reviewing district [judge] in objections to the magistrate judge's report and recommendation.").

**IT IS SO ORDERED**.

**SIGNED** this 28th day of August, 2026.



**RICHARD B. FARRER**
**UNITED STATES MAGISTRATE JUDGE**